UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
ISAAC GREENWALD
and GREENWALD CATERERS, INC.,

                     Appellants,

      v.

POCMONT PROPERTIES, LLC
and SAUL KESSLER,

                     Appellees.
---------------------------------------------------------x

**MEMORANDUM & ORDER**
23-CV-02875 (RPK)

RACHEL P. KOVNER, United States District Judge:

Appellants Isaac Greenwald and Greenwald Caterers, Inc., appeal the Bankruptcy Court's denial of their motions to reopen a bankruptcy proceeding involving appellee-debtor Pocmont Properties and to vacate the sale of the appellee-debtor's real property. For the reasons discussed below, the Bankruptcy Court's decisions are affirmed.

## BACKGROUND

Appellee Pocmont Properties, LLC was the debtor in a Chapter 11 bankruptcy proceeding from which this appeal arises. It formerly owned real property located at 1 Bushkill Falls Road, also known as 159 Pocmont Loop, in Bushkill, Pennsylvania (the "Property"). A hotel named Bushkill Inn & Conference Center operated on that property, but Pocmont Properties did not itself operate the hotel. Appellants' App'x 785 (Dkt. #8). Instead, Pocmont Properties leased the property to Pocmont Holdings, LLC, while another entity, Bushkill One Hospitality, operated the hotel. *Id.* at 2, 85–86, 777, 785. Appellee Saul Kessler was the manager of Pocmont Properties, but did not possess an equity interest in the company. *Id.* at 99, 707.

In 2014, Pocmont Properties filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of New Jersey. *See In re Pocmont Props., LLC*, No. 14-BK-

16493 (CMG) (Bankr. D.N.J.). Appellant Greenwald held an equity interest in Pocmont Properties at the time of the bankruptcy filing and was listed as a co-debtor with Pocmont Properties in that proceeding. Appellants' App'x 595. Appellants Greenwald and Greenwald Caterers had also guaranteed loans that Pocmont Properties obtained from the Small Business Administration ("SBA"). *Id*. at 700–02.

Under a 2014 Bankruptcy Plan confirmed in March 2015, the present owners of Pocmont Properties—Benjamin Kessler, Jonathan Kessler, and Julie Kessler—acquired 100% of the equity in Pocmont Properties. *Id*. at 102, 632, 650. Appellant Greenwald's equity interest in Pocmont Properties was extinguished. *Id*. at 524, 555. In addition, appellee Saul Kessler and his wife Julie Kessler replaced appellants as guarantors of Pocmont Properties' loan obligations to the SBA, with appellants receiving a general release from the agency. *Id*. at 625–26, 700–02.

In 2019, Pocmont Properties again filed for Chapter 11 bankruptcy. In its bankruptcy schedules, Pocmont Properties indicated that it owed secured creditors over $6 million. This included over $4.4 million owed to the SBA and around $1.18 million owed to local taxing authorities. *Id*. at 88–89. Pocmont Properties represented in its Chapter 11 filing that it also owed around $32,000 to unsecured creditors, including the Internal Revenue Service and utility companies. *Id*. at 90–91. The bankruptcy schedules listed Benjamin, Jonathan, and Julie Kessler as the sole owners of the company. *Id*. at 102. The only executory contract listed was a lease of the hotel property to Pocmont Holdings LLC. *Id*. at 92. Appellants were not identified as creditors, owners, or co-obligors, and were not otherwise named on the schedules.

In December 2020, the Bankruptcy Court confirmed a bankruptcy plan for Pocmont Properties. The Plan provided that Pocmont Properties would make monthly installment payments to the SBA and taxing authorities for a specified number of years. *Id*. at 175–77. The Plan

provided that in the event the Property was sold, each creditor would still receive the distribution it was entitled to receive under the Plan, unless the creditor agreed in writing to be paid a lesser amount. *Id.* at 464–65. The Plan further provided that the sale of the Property would be "subject to a contract of sale on at least thirty days' notice of the closing date and expected closing statement to the creditors and parties in interest." *Id.* at 464. The Bankruptcy Court entered a final decree and order confirming this plan in July 2021 and closed the bankruptcy case. *Id.* at 77.

After the 2019 Plan was confirmed, Pocmont Properties marketed the Property for sale. It eventually received an offer from a prospective purchaser for $3.6 million. *Id.* at 708–09. Because the sale proceeds would not cover all the distributions Pocmont Properties still owed to its creditors, it sought consent from SBA, its largest secured creditor, to short sell at that price. *Id.* at 709. The SBA conducted an independent valuation of the Property and agreed to the sale. *Ibid.* Consistent with the 2019 Plan, Pocmont Properties notified by e-mail all creditors listed under the Plan of the proposed sale for $3.6 million. *Id.* at 481, 709–10. On September 16, 2022, Pocmont Properties sold the Property and used the sale proceeds to pay the SBA an amount previously agreed upon, and to pay all other creditors the remainder due on their claims. *Id.* at 703–04, 709–10.

Although appellants were not given advance notice of the sale, they have been aware of Pocmont Properties' efforts to sell the Property since at least January 2022. *Id.* at 56–57. At that time, appellant Greenwald indicated an interest in purchasing the Property. *Id.* at 56.

In August 2022, appellant Greenwald learned of the existence of the bankruptcy case, and that the sale of the Property was imminent. He again expressed an interest in purchasing the Property. *Id.* at 57–59. By then, Pocmont Properties was already in contract with the eventual purchaser. *Id.* at 709. Kessler expressed skepticism that Greenwald could obtain the financing

needed to follow through on a purchase and was also concerned that the SBA would not consent to a sale to Greenwald because he was previously liable on an SBA debt. *Ibid.*

In March 2023—more than five months after the sale of the Property—appellants moved to reopen the Chapter 11 proceeding pursuant to Section 350(b) of the United States Bankruptcy Code and Bankruptcy Rule 5010 in order to vacate the sale of the Property. *Id.* at 1. Appellants contended that because they were "parties in interest," the 2019 Plan had required the debtor, Pocmont Properties, to give them advanced notice of the sale of the real property. *Id.* at 6. The debtor's failure to do so, they argued, rendered the sale of the Property void. *Id.* at 34.

To show that appellants were parties in interest, appellants submitted to the Bankruptcy Court a declaration from Greenwald. In the declaration, Greenwald, who "owned and ran Greenwald Caterers," stated that he entered into a partnership agreement with Saul Kessler, the manager of Pocmont Properties, LLC, "in the real estate and business conducted at the Hotel." *Id.* at 56. Under the agreement, Greenwald averred, Greenwald "would be responsible for providing catering services and bookings at the hotel catered to observant Jews," while Saul Kessler "would be in charge of operations." *Ibid.* Greenwald asserted that he and Kessler agreed to a 45-55 partnership "in the real estate and business conducted at the Hotel." *Ibid.* He submitted to the Bankruptcy Court a memorandum prepared by a business advisor, Harry Sussman, that Greenwald asserted memorialized the outline of Greenwald's partnership agreement with Kessler. *Ibid.* The memorandum is not dated, *see id.* at 148, 716, but Sussman sent the memorandum to the debtor's then-counsel in May 2014 for edits and comments, *id.* at 480, 715. The memorandum was not signed by either party. *See id.* at 148, 716.

Appellants further contended that appellants' and Kessler's actions in accordance with the partnership agreement provided evidence that appellants and Kessler had a partnership agreement

in both the real estate and business conducted at the hotel.  They pointed to evidence that (i) Greenwald Caterers paid for Saul Kessler's health insurance, (ii) Greenwald contributed $300,000 for capital improvements to the hotel and property, and (iii) profits from Greenwald Caterers were used to upgrade the hotel and for capital contributions.  *Id*. at 57.

Finally, appellants relied in the Bankruptcy Court on an October 2022 recorded conversation between Harry Sussman, Saul Kessler, and another individual as evidencing a partnership between Kessler and Greenwald.  In that recorded conversation, when told that "all we should do is say the truth. You didn't discuss it with your partner," Kessler responds, "(Indiscernible) 55/45, would I have to discuss it with my partner?" *Id*. at 323.  Kessler also stated that "[i]f you are not realistic about the losses that are going on . . . in the situation, and the fact that the property could be sold at a tax sale at any time, someone has to step up to the plate and make a decision . . . that one partner might not like." *Id*. at 334.  Throughout the conversation, Kessler neither clearly denied nor confirmed the existence of a partnership with Greenwald. *See id*. at 272–425.

On March 28, 2023, the Bankruptcy Court held a hearing on appellants' motions to reopen the bankruptcy and to vacate the sale of the Property. *See id*. at 742–89.  After hearing arguments from both sides, the Bankruptcy Court determined that an evidentiary hearing was unnecessary and denied appellants' motions.

The Bankruptcy Court first found that appellants did not have standing to seek to reopen the bankruptcy case under Federal Rule of Bankruptcy Procedure 5010 because "[n]othing showed that Greenwald had an ownership interest in the debtor or was otherwise a party in interest in this bankruptcy." *Id*. at 785.  In determining that Greenwald and his company lacked any ownership interest in Pocmont Properties, the Bankruptcy Court noted that the record contained no written

agreement between appellants and the debtor. *Id.* at 779. The Bankruptcy Court found the unsigned memorandum describing an asserted business arrangement between Greenwald and Kessler was "completely irrelevant" for several reasons. *Id.* at 785. For starters, that memorandum did not suggest a contractual agreement between debtor Pocmont Properties and Greenwald or Greenwald Caterers. Even if the unsigned memorandum were taken as evidence of a partnership between Saul Kessler and the appellants, it observed, "Saul Kessler doesn't own an interest in the debtor and, therefore, can't convey an interest in the debtor." *Id.* at 759. Additionally, that memorandum predated the confirmation of the 2014 Bankruptcy Plan, which extinguished any equity interest held by Greenwald in the debtor. *Id.* at 753.

The Bankruptcy Court also observed that to the extent that Greenwald or Greenwald Caterers did have a catering contract, "[i]t was only through . . . the management company," and not debtor Pocmont Properties. *Id.* at 777. While the debtor owned the Property, "it did not run the hotel situated there." *Id.* at 785. Thus, the Bankruptcy Court stated that "[i]t does not appear that Greenwald individually or Greenwald Caterers was a party to an executory contract with the debtor." *Ibid.*

Further, the Bankruptcy Court found that it was "not really believable" that appellants and Pocmont Properties "had such a close relationship" but that appellants "didn't know the debtor had filed" for bankruptcy. *Id.* at 763–64.

In the alternative, the Bankruptcy Court determined that even if appellants had standing to move to reopen, there was no cause to reopen the case because vacatur of the sale of the Property was unwarranted. Because the Bankruptcy Court determined that neither appellant was a party in interest, the debtor did not violate the Bankruptcy Court's mandate to serve notice of the Property sale on "creditors and parties in interest." *Id.* at 786–89. The Bankruptcy Court also found no

valid reason to vacate the sale because no creditors were harmed by the manner in which the Property was sold. *Id.* at 787.

Finally, the Bankruptcy Court opined that appellants had waited too long to seek to vacate the sale, pointing out that the sale had already been completed months prior to the filing of the motion. *Id.* at 788.

Appellants timely filed this appeal. *See* Notice of Appeal (Dkt. #1).[*] Appellants argue that they had standing as parties in interest to reopen the bankruptcy proceeding because the sale of the Property "directly and adversely affected" their pecuniary interests. *See* Appellants' Br. 18 (Dkt. #6). Appellants further argue that there was sufficient cause to reopen the proceeding, that the sale of the Property should be vacated because the debtor breached the terms of the confirmation order, and that its motions were timely. *See id.* at 24–41.

## STANDARD OF REVIEW

Section 158 of the Bankruptcy Code authorizes district courts to review a bankruptcy court's final judgments, decrees, and orders. 11 U.S.C. § 158(a). "A bankruptcy judge's decision to grant or deny a motion to reopen pursuant to 11 U.S.C. § 350(b) shall not be disturbed absent an abuse of discretion." *Smith v. Silverman (In re Smith)*, 645 F.3d 186, 189 (2d Cir. 2011). A bankruptcy court abuses its discretion when its decision "(1) rests on an error of law (such as application of the wrong legal principle) or a clearly erroneous factual finding, or (2) cannot be located within the range of permissible decisions, even if it is not necessarily the product of a legal error or a clearly erroneous factual finding." *In re Fletcher Int'l, Ltd.*, 536 B.R. 551, 558 (S.D.N.Y. 2015) (quotation marks omitted) (quoting *In re Smith*, 507 F.3d 64, 73 (2d Cir.2007)), *aff'd*, 661 F. App'x 124 (2d Cir. 2016)). Applying these principles in the context of the questions presented

---

[*] Because "the facts and legal arguments are adequately presented in the briefs and in the record," appellants' request for oral argument on the appeal is denied. Fed. R. Bankr. Pro. 8019(b)(3); *see* Request for Oral Arg. (Dkt. #17).

in this case, the construction of the term "party of interest" under Federal Rule of Bankruptcy Procedure 5010 is a legal question that this Court reviews *de novo*, *In re Teligent, Inc*., 640 F.3d 53, 57 (2d Cir. 2011), but "the bankruptcy court's application of those principles . . . is reviewed for abuse of discretion," *In re Refco Inc*., 505 F.3d 109, 116 (2d Cir. 2007).

## DISCUSSION

The Bankruptcy Court's decision to deny appellants' motion to reopen is affirmed because appellants have not shown they were parties in interest entitled to seek reopening.

Under Federal Rule of Bankruptcy Procedure 5010, "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code."  Because neither Rule 5010 nor Section 350(b) defines a "party in interest," courts construing that term have looked to another provision of the Bankruptcy Code that does.  Section 1109(b) of the Bankruptcy Code defines a party of interest as "including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee."  11 U.S.C. § 1109(b); *see In re Papazov*, 610 F. App'x 700 (9th Cir. 2015); *In re Riley*, No. 13-61356, 2017 WL 4334033, at *4 (Bankr. N.D.N.Y. Sept. 28, 2017), *aff'd sub nom. Saticoy Bay LLC Series 2110 Club Meadows v. JP Morgan Chase Bank*, No. 3:18-CV-579, 2018 WL 11203041 (N.D.N.Y. Nov. 21, 2018).  These categories are "illustrative but non-exhaustive." *Truck Ins. Exch. v. Kaiser Gypsum Co.*, No. 22-1079, 2024 WL 2853106, at *5 (U.S. June 6, 2024). "The general theory behind [§1109(b)] is that anyone holding a direct financial stake in the outcome of the case should have an opportunity (either directly or through an appropriate representative) to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." *Ibid.* (alteration in original) (quoting 7 Collier on Bankruptcy ¶1109.01 (16th ed. 2023)).  Thus, anyone "directly and adversely affected by the reorganization plan" is a party in interest. *Ibid.*

The Bankruptcy Court did not abuse its discretion under these principles in determining that appellants were not entitled to reopen the bankruptcy proceeding because appellants were not parties in interest.  The Bankruptcy Court permissibly found that neither appellant was a part-owner or creditor of Pocmont Properties.  In finding that appellants lacked an ownership interest in Pocmont Properties, the Court reasonably relied on the absence of a signed, written agreement evidencing any such interest.   Appellants' App'x 779.   It also reasonably relied on the shortcomings of appellants' claims regarding a partnership between Greenwald and Kessler, including the fact that Kessler did not have an ownership interest in Pocmont Properties that he could confer, *see id.* at 102, 595, 759, and the fact that any ownership interest Greenwald obtained in or around May 2014 would have been wiped out by the 2014 Bankruptcy Plan entered in March 2015, *id.* at 785.  As to a creditor relationship, the Bankruptcy Court reasonably concluded that appellants were not creditors of Pocmont Properties after determining that to the extent that Greenwald or Greenwald Caterers had a contract to provide catering services to the hotel, that contract would only be "through . . . the management company," either Pocmont Holdings or Bushkill One Hospitality, and not the debtor, Pocmont Properties.  *Id.* at 777, 785.  These conclusions were neither "clearly erroneous factual finding[s]" nor findings that "cannot be located within the range of permissible decisions."  *In re Pugh*, 2020 WL 2836823, at *4.

Kessler's statements during a recorded conversation in October 2022—on which appellants heavily rely—do not render the Bankruptcy Court's determinations an abuse of discretion.  *See* Appellants' Br. 21; Appellants' Reply 2 (Dkt. #15).  While appellants point to several statements by Kessler that allegedly "corroborat[ed] the existence of a partnership," Appellants' Br. 12, Kessler never explicitly acknowledged the existence of a partnership between him and Greenwald during the recorded conversation, *see* Appellants' App'x 272–425.  And as the Bankruptcy Court

explained, any partnership on the part of Greenwald and his catering company would have likely been with Pocmont Holdings or Bushkill One Hospitality, rather than debtor Pocmont Properties. *See id.* at 777, 785.

In the absence of an ownership interest or creditor relationship, appellants have not shown a pecuniary interest in the outcome of the bankruptcy proceeding sufficient to establish that they were parties in interest. Appellants argue that their pecuniary interests were affected by the sale of the Property because "the operational connections between the Caterers and the Hotel," as well as between "Greenwald and Kessler . . . individually" were "intertwined," Appellants' Reply 4, but they make no specific argument in this court as to why interrelationships of this type meant that their pecuniary interests were directly affected by the Property's sale. To the extent appellants assert they had a sufficient pecuniary interest because they were prospective buyers of the Property, the Bankruptcy Court correctly observed that "a prospective purchaser of assets of a bankruptcy estate is not within the zone of interests intended to be protected by the Bankruptcy Code and, therefore, typically does not have standing to challenge the sale of the assets to another party." Appellants' App'x 782; *see Wallach v. Kirschenbaum*, No. 11-CV-0795 (SJF), 2011 WL 2470609, at *4 (E.D.N.Y. June 16, 2011).

Finally, contrary to appellants' contentions, appellants were not entitled to an evidentiary hearing before the Bankruptcy Court denied their motion. Appellants' Br. 23–24 (Dkt. #6). "[T]he Bankruptcy Court has the discretion to decide an issue without holding an evidentiary hearing, and this Court can reverse such a decision only if it amounts to an abuse of discretion." *Rockstone Cap. LLC v. Metal*, 508 B.R. 552, 558 (E.D.N.Y. 2014). Moreover, "[a] Bankruptcy Court judge does not abuse her discretion in reaching a decision without holding an evidentiary hearing where 'the record provided ample evidence on which the court could make such a decision.'" *Ibid.*

(quoting *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1313 (2d Cir.1997)).  Here, the Bankruptcy Court had before it "ample evidence" bearing on whether appellants qualified as parties in interest, *ibid.*, including sworn affidavits, related documents, and the records from two bankruptcy proceedings.  Accordingly, the Bankruptcy Court did not abuse its discretion in declining to hold an evidentiary hearing before issuing its decision.

Because neither appellant was a "party in interest" under Rule 5010, appellants were not entitled to move to reopen the bankruptcy proceeding under Section 350(b).  Accordingly, the Bankruptcy Court did not err in denying appellants' motion to reopen.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision below is affirmed and the appeal is dismissed.  The Clerk of Court is respectfully directed to enter judgment and close the case.

SO ORDERED.

/s/ Rachel Kovner
RACHEL P. KOVNER
United States District Judge

Dated: June 17, 2024
        Brooklyn, New York

11